*In re* MARRIAGE OF CHRISTINE VERDUNG, Petitioner-Appellant, and PHILIP W. VERDUNG, Respondent (Jo Ann Verdung, Respondent-Appellee).

Second District   No. 2—86—0588

Opinion filed November 4, 1987.

REINHARD, J., dissenting.

Patrick I. Hartnett, of Hartnett & Hartnett, of Chicago, for appellant.

Norman H. Lehrer, of Lehrer, Flaherty & Canavan, and Francis X. Riley, both of Wheaton, for appellee.

JUSTICE WOODWARD delivered the opinion of the court:

Petitioner, respondent's first wife (Christine), appeals from a decision of the circuit court of Kane County which awarded the respondent's second wife (JoAnn) one-half of the net proceeds from the sale of certain residential real estate located in Glen Ellyn, Illinois (subject premises). On appeal Christine raises one issue, namely, that the trial court erred as a matter of law when it awarded JoAnn one-half of the net proceeds from the sale of the subject premises.

On April 19, 1978, Christine filed a petition for dissolution of her marriage to respondent (Philip). On June 23, 1978, Philip filed his response to this petition and filed a counterpetition for dissolution. On October 19, 1978, the matter was heard as a stipulated matter on the issue of grounds only. After the hearing based on the stipulation as to grounds, the trial court found in Christine's favor. The matter was then continued for trial on the issues of property, support, and maintenance.

On March 26, 1979, Christine requested the court to vacate its finding on the issue of grounds, since the parties (Christine and Philip) had reached a complete agreement on all issues. The court granted that request, and on April 9, 1979, a judgment for dissolution of marriage was entered. Pursuant to that judgment, Philip agreed to pay Christine a lump sum of $115,000 to be paid in monthly installments of $950, commencing May 1, 1979. The final payment, due May 1989, was to be for $1,000. The payments were taxable to Christine and were not to terminate in the event of her death or remarriage or Philip's death. Upon completion of the payments, Christine agreed to

be forever barred from making any further claims against Philip for support or maintenance.

Philip married JoAnn on April 16, 1979. In July 1980, JoAnn and Philip purchased as joint tenants the subject premises commonly known as 23 W 144 Red Oak Drive, Glen Ellyn, Illinois.

On December 28, 1982, Christine filed a rule to show cause against Philip. On January 27, 1983, the trial court found that Philip was in arrears in the amount of $1,700 and ordered him to make increased monthly payments to satisfy the arrearage. On August 22, 1983, Christine filed a second petition for rule to show cause against Philip. On the same date, the trial court entered a rule to show cause against Philip. In the next several months, three alias rules to show cause were entered by the court.

On January 27, 1984, Philip conveyed all of his right, title, and interests in the subject premises to JoAnn. On April 12, 1984, Philip filed an answer to Christine's second petition for rule to show cause. The following day a hearing was held on the return of the rule; Philip was present with his attorney; also, JoAnn was present. Christine's attorney stated he was going to call JoAnn as a witness, and Philip's attorney inquired as to the reason for her testimony. Christine's attorney refused to state a reason and then Philip's attorney stated in part:

"MR. HUSZAGH [Philip's attorney]: Your Honor, may I know why JoAnn Verdung is going to be asked to testify?

MR. MARSH [Christine's attorney]: He is not entitled to that Information.

MR. HUSZAGH: Yes, I am. If he wants to say now, 'I'm going to exclude her from the courtroom,' *she wants to hear what goes on with her husband, and it's very important to her*; and this is a tactic they have done three times before." (Emphasis added.)

JoAnn testified at this hearing.

The next hearing on the rule to show cause against Philip was held on July 27, 1984. Christine's attorney stated that he was unable to serve Philip with a rule to show cause and that he needed assistance in ascertaining Philip's whereabouts; he requested that Philip's attorney stipulate that JoAnn be in court to testify at subsequent hearings, and, thereafter, the following colloquy occurred:

"MR. HUSZAGH [Philip's attorney]: Rather than putting the responsibility on me, I think that is an appropriate thing to address to the Court—have the Court to do.

THE COURT: On the Court's motion, I'm going to add her

as a party for the purpose of testifying in this cause.

MR. HUSZAGH: Merely for the purpose of testifying?

THE COURT: Merely for the purpose of testifying. If we discover he made improper transfers, that order can be expanded."

The transcript of proceedings for July 27, 1984, did not show that JoAnn was present in court; however, the order that was entered restrained Philip from selling the subject premises and added JoAnn as a party-defendant for the purpose of having her appear and testify, and it directed her to attend subsequent hearings. JoAnn did not file a special or general appearance or file any objections to the court's order making her a party to the lawsuit at that time or at anytime thereafter until November 19, 1985, as hereafter set forth.

On October 4, 1984, Christine's attorney appeared on a motion to appoint a sequestrator for the subject premises; this motion stated that Philip had conveyed his assets to JoAnn and that the subject premises was Philip's last known asset that could be used to satisfy his obligation to Christine. At this hearing JoAnn was called to the stand, but the proceedings thereafter are not reported except that a conference was held in the judge's chambers, and, on returning to the courtroom, the judge stated in part as follows:

"Let the record show that we have had a conference in chambers concerning the disposition of this matter. *** Without further testimony the Court has made a proposal and would enter FINDINGS in accordance with that proposal. *** [T]he conveyance of the MARITAL home of Mrs. Verdung was found to be a fraud AS AGAINST the former wife, and in accordance with that finding the house shall stand as security for the balance due and payable to Mrs. Christine Verdung."

There is no showing in the record whether or not JoAnn was present at the conference in the judge's chambers. At that time, counsel agreed that the total amount due from Philip to Christine was $56,000.

On November 4, 1984, the attorneys for Christine and Philip appeared to present their prospective positions and to have an order based on the October 4, 1984, hearing. During the discussion, Philip's attorney stated in part as follows:

"But as to the order that he has presented to the Court and which doesn't completely follow, but in the large part follows the Court's statements of October 4, and that was following a couple of hearings. And your Honor found that the home that Mr. Verdung lived in in Glen Ellyn on Red Oak Drive, that his

conveyance to his present wife, Joanne Verdung, was in violation of the Illinois Fraudulent Conveyance Act and, therefore, the lien of Christine Rii—I guess it is Christine Verdung Riis—should be imposed upon that property. We are not here objecting to that, your Honor. What we are objecting to is the Court entering an order which would, in effect, accelerate the payments."

Thereafter, the court stated that the order to be entered would provide for depositing the money from the sale of the subject premises with the circuit clerk to be invested in a certificate of deposit. The hearing was adjourned with the understanding that the order would be rewritten.

On December 4, 1984, the court entered an order which was based on the proceedings held on October 4, 1984; it made the following findings: that the conveyance of the marital home by Philip to JoAnn was a fraud against Christine and that the subject premises should stand as security for the balance of $56,900 remaining due and payable by Philip to Christine. The court further ordered that in the event the subject premises were sold, any remaining balance of the lump sum payment due Christine would be accelerated and paid out of the proceeds of the sale and that if any arrearage remained at the time of the sale, such arrearage would be paid from the proceeds. The court also ordered a schedule of payments due and payable to Christine from Philip.

On June 4, 1985, Christine filed a motion against Philip and JoAnn for a rule to show cause and for sanctions for violation of the court order of December 4, 1984; the motion requested the court to order "respondents" to convey the subject premises to Christine or allow her to take possession of the subject premises so that she could get the rent, as the subject premises had been occupied by a tenant. Notice of this motion was served upon attorney Huszagh and Philip and JoAnn at the address of the subject premises. The court issued a rule to show cause on June 5, 1985, against Philip for failure to comply with the previous support orders, and the rule was continued to July 9, 1985.

On July 9, 1985, the trial court entered an order stating that "counsel for parties both being present," and that the matter came on the continued motion of Christine filed on June 4, 1985. Said order provided that the subject premises "owned by JoAnn shall be conveyed to Christine Verdung by a judge's deed to be issued by this court." Christine was to immediately list the subject premises for sale, and further, the order provided in part as follows:

"3. That prior to closing, any sale and distribution of funds shall be presented to this court for approval.

\* \* \*

5. That at closing, all arrearages paid immediately and directly to Christine Riis [Verdung] + the balance owed her shall be placed in escrow at Gary Wheaton Bank, said balance to be paid her in monthly installments equivalent to payments ordered by this court in Judgment for Dissolution of Marriage of 4—9—79."

Said order further provided that Christine should list the subject premises for sale for $250,000. On July 9, 1985, the court also entered a rule to show cause against Philip's attorney requiring him to disclose the whereabouts of Philip. This rule was returnable on August 6, 1985. On August 6, 1985, the court entered an order modifying the order of July 9, 1985, to provide for the judge's deed to be executed by Honorable Judge James Wilson, and further, it discharged the rule entered against Philip's attorney.

A transcript was filed in this cause of certain proceedings of August 16, 1985, heard before the same judge who signed the order of July 9, 1985. At this hearing, Christine's attorney and Philip's attorney appeared, and they discussed the judge's deed as follows:

"THE COURT: \* \* \*

Take this [the deed] to Judge Wilson and you can get that signed.

MR. HUSZAGH: I would make one suggestion, though. I think that rather than conveying the property, I made out a list—

THE COURT: Oh, no, no, no, Mr. Huszagh, no, no, no. Nothing—There's nothing before me. I'm not going to do any changes. Take it up to Judge Wilson and have him sign it. I am not going to rehash this business again.

MR. HUSZAGH: No, I was just talking about your order, Your Honor, and what his proposed deed is.

MR. HARTNETT: What about this?

THE COURT: What's wrong with the deed?

MR. HUSZAGH: Okay. *The deed makes no provision for the interest of JoAnn Verdung. JoAnn Verdung has a sizeable interest in this.*

THE COURT: Didn't we cover all that in the order?

MR. HARTNETT: Yes.

MR. HUSZAGH: No, we didn't.

MR. HARTNETT: Sure, it's listed in the order, Judge.

MR. HUSZAGH: I don't think it covers her interest. It merely said to appear before the Court.

THE COURT: I thought we provided that before any proceeds were distributed—

MR. HUSZAGH: The Court may make approval.

THE COURT: —the accounting be approved by the Court.

MR. HUSZAGH: Did it say accounting, Judge? I know it said the distribution of proceeds—

THE COURT: We spent a lot of time on this, I know we did.

MR. HARTNETT: I remember—

MR. HUSZAGH: Here it is. 'Three. That prior to closing, any sale and distribution of funds shall be presented to this Court for approval.' That's all it says.

THE COURT: So, that takes care of that. The property's worth is probably—

MR. HUSZAGH: Possibly two fifty.

THE COURT: Your client gets about fifty or thereabouts, and at the time it closes Mr. Hartnett is going to come in here with a petition asking me to approve any distribution of funds. At that time you can come in here and make sure it goes where it's supposed to go.

MR. HARTNETT: We will prove up the arrearage at that time, and that's it, I assume.

THE COURT: Right.

MR. HARTNETT: Now, Judge, I received a notice of motion for him to withdraw. That's up before you. I don't know what you want to do. I want to know what he is going to do.

MR. HUSZAGH: I would rather not—I tried doing that under pressure, you know, and I do not want to leave my client without representation.

THE COURT: I don't care whether you withdraw or what. Just don't reargue this matter, okay? I'm not going to hear it again.

MR. HUSZAGH: Okay. *So, you won't hear my proposition that the partition is the more appropriate remedy than the sale?*

THE COURT: *Absolutely not.*

MR. HUSZAGH: Right, Your Honor.

THE COURT: Absolutely not.

Okay. Tell Judge Wilson, show him the order, he will sign it for you, I am sure.

MR. HARTNETT: All right. Should I prepare an order for you to sign here transferring it to Judge Wilson?

THE COURT: Well, Mr. Huszagh can show a hearing was held, he was discharged from the rule for your own protection or whatever." (Emphasis added.)

On July 30, 1985, R. L. Huszagh had filed a notice and motion to withdraw as Philip's attorney; this request was granted on November 1, 1985, and he was granted leave to file his petition for attorney fees. The exhibit attached to the petition for fees itemized many telephone calls and conferences with Philip and JoAnn starting in September 1983 and continuing through August 1985 regarding this case and the subject premises.

On November 12, 1985, Christine's attorney served notice on Philip, JoAnn, and attorney Jack T. Perry that he intended to present a motion to reduce the sale price of the subject premises. On November 19, 1985, the case came on for hearing before a judge who had not previously heard any part of the case; Christine's attorney presented a motion to reduce the sale price of the subject premises. Attorney John T. Perry entered his appearance in behalf of JoAnn, and he stated to the court as follows:

"MR. PERRY: Your Honor, I likewise, on behalf of Joann Verdung, again reminding the Court that is the second Mrs. Verdung, this property was purchased by the second Mrs. Verdung and Phillip Verdung after this divorce.

The background of this—and as joint tenants, your Honor. The background of this was that during these earlier proceedings, post-decree proceedings, there was a conveyance by Phillip Verdung to JoAnn Verdung, that is the order that the, or that is the matter that the previous Judge made a decision that property all go to Christine Verdung which was done last summer.

Judge Colwell entered that order.

It is my position and intention that half of this property is, in fact, JoAnn Verdung's property by virtue of the purchase of the property originally and the holding of it in joint tenancy. That would be the subject of a petition at a later time, but at the present time, I would object to Mr. Huszagh having any lien on a, a portion of the property until it's determined where the real legal interests lie."

Thereafter an evidentiary hearing was held during which Mr. Perry cross-examined the witnesses. At the conclusion of the hearing, he requested a continuance which the court denied, and over his ob-

jections, the court ordered that the subject premises be sold for $170,000, in accordance with the contract of sale that was presented by Christine. Philip's attorney also sought a lien for fees which the court did not decide but the order provided that the "division of any sales proceeds shall be subject to further order of the court."

The subject premises were sold in late 1985, and Christine filed a motion on January 9, 1986, to distribute the sale proceeds. This motion came on for hearing on February 6, 1986, before the judge who first came on the case on November 19, 1985. Attorney Perry at this time in behalf of JoAnn again claimed a one-half interest in the net proceeds of sale; he also offered in evidence a deed dated June 2, 1980, conveying the subject premises to JoAnn and Phillip as joint tenants. The judge with consent of counsel stated he would review the transcripts of all prior hearings and decide the issue as to JoAnn's right to one-half of the proceeds.

On March 24, 1986, JoAnn filed an unverified answer to Christine's motion to distribute the proceeds of the sale. She contended that despite the court's previous finding that Philip's conveyance to her was fraudulent, she still had an ownership of an undivided one-half interest therein and was entitled to one-half the net proceeds of sale. Although the subject premises was sold for $170,000, the net proceeds of sale after payment of the mortgage and expenses of sale were approximately $40,000. The trial judge awarded one-half of the net proceeds to Christine and one-half of the net proceeds to JoAnn, or approximately $20,000 each. Christine moved for reconsideration of the award to JoAnn on April 23, 1986. The trial court denied the motion on June 3, 1986, and this appeal followed.

On appeal, Christine asserts that the orders of the trial court dealing with JoAnn's interest in the subject premises, namely, granting a lien and the issuance of a judge's deed, constituted final orders; that JoAnn had been made a party-defendant and failed to file a notice of appeal within 30 days from the orders which, therefore, were not subject to collateral attack. JoAnn claims that she was never a party to the cause in the lower court; that she never appeared voluntarily and was not served with process; and that there was no justiciable issue between Christine and her.

The issue that must first be addressed in this appeal is whether the trial court had jurisdiction of the person of JoAnn. There is no question that the trial court had jurisdiction of JoAnn's person on or after November 19, 1985, when attorney Perry filed a general appearance; however, the order placing the lien on the subject premises was entered December 4, 1984, and the order directing the conveyance of

all of JoAnn's interest in the subject premises to Christine was entered on August 6, 1985; both of these orders were entered prior to November 19, 1985, the date that JoAnn's general appearance was filed.

In view of the foregoing facts, the critical issue in this case is whether JoAnn's conduct during this case invoked the *in personam* jurisdiction of the trial court. There are two periods of time to be examined, namely, her conduct prior to the date her general appearance was filed and whether her conduct, including the conduct of her attorney, after the filing of the general appearance waives her right to object to the court's jurisdiction prior to November 19, 1985.

The general principle applicable to this type of situation was addressed by our supreme court in *Lord v. Hubert* (1957), 12 Ill. 2d 83, which was a partition action brought by a contingent remainderman to again partition a 141-acre farm which had been previously conveyed by a partition sale to the defendant. The plaintiff was the conservator of a contingent remainderman who contended that since his interest in the farm arose after the first partition suit and because he was not a party thereto, his interest therein could not have been extinguished by the first partition proceeding. The trial court dismissed the complaint. On appeal, the court held that a contingent remainderman who was neither served with process nor appeared prior to the original partition sale but who thereafter brought a separate proceeding to secure trust income derived from the partition sale and who petitioned the court in the original partition suit to terminate said trust and pay the corpus to him as the ultimate beneficiary, thereby acknowledged the existence of the first partition suit by seeking the benefits thereof and admitted its validity; that by the filing of a petition in the original partition, he waived any jurisdictional defects as it constituted a general appearance. The court held that plaintiff's interest in the real estate had been previously extinguished by the prior partition proceedings. The court stated that a party could not by a voluntary action request the court to exercise its jurisdiction and at the same time deny that such jurisdiction existed. The court in *Lord v. Hubert* (1957), 12 Ill. 2d 83, observed as follows:

> "Although the court participation may come in many forms, suffice to say that any action taken by the litigant which recognizes the case as in court will amount to a general appearance unless such action was for *the sole purpose of objecting to the jurisdiction.* [Citations.]" (Emphasis added.) *Lord v. Hubert* (1957), 12 Ill. 2d 83, 87.

In *J. C. Penney Co. v. West* (1983), 114 Ill. App. 3d 644, a default

judgment was entered on February 23, 1978; on June 1, 1978, defendant appeared specially and was granted leave to file a motion to quash service; however, he failed to appear on the scheduled date of September 28, 1978; on June 4, 1979, a new attorney presented a section 72 petition pursuant to the Code of Civil Procedure (Code) (Ill. Rev. Stat. 1979, ch. 110, par. 72) addressed to the merits of the case but did not allege improper service. On February 28, 1980, a third attorney filed a special appearance to quash service supported by affidavit. On appeal, the court held that defendant's general appearance in the section 72 petition (Ill. Rev. Stat. 1979, ch. 110, par. 72) submitted him to the court's jurisdiction only prospectively. The case was remanded to the trial court with instructions to determine the validity of the service on the defendant, and if it was found invalid, the default judgment was to be vacated. The court stated:

> "The law is clear in Illinois that ' "[a] judgment, order or decree entered by a court which lacks jurisdiction of the parties or of the subject matter *** is void, and may be attacked at any time or in any court, either directly or collaterally.' " [Citations.] *** However, *it is well settled in Illinois that a party challenging the personal jurisdiction of the court must limit his appearance solely to that purpose and that where the party raises additional defenses, he has entered a general appearance and submitted himself to the court's jurisdiction.* [Citations.] Where a general appearance is made subsequent to judgment, however, the decisions of the Illinois courts conflict as to the consequences of such an appearance." (Emphasis added.) *J. C. Penney Co. v. West* (1983), 114 Ill. App. 3d 644, 646.

In *Sullivan v. Bach* (1981), 100 Ill. App. 3d 1135, this court considered a case involving a default judgment of $20,000 entered in a personal injury case. Approximately a year later, the defendant's attorney filed a general appearance and a section 72 petition to vacate the judgment. Approximately one month later, the defendant filed an amended petition alleging lack of personal jurisdiction over the defendant. The trial court denied the defendant's petition on the basis that he had waived the jurisdictional defense by filing the general appearance. The court pointed out that the general appearance was filed subsequent to the entry of the default judgment. The court also observed that prior to asserting the claim of lack of personal jurisdiction, the defendant had sought a continuance of the citation proceeding and also had filed a section 72 petition (Ill. Rev. Stat. 1979, ch. 110, par. 72) to vacate the default judgment on the basis of a meritorious defense. The court commented on the *in personam* jurisdiction

of the court in default cases as follows:

"A review of the case law in Illinois does indicate that opinions of this court are divided on this issue in cases where appearances and motions are made subsequent to [default judgments]." (*Sullivan v. Bach* (1981), 100 Ill. App. 3d 1135, 1141.)

The court further observed:

"However, an appearance subsequent to judgment may be construed as submission to the court's jurisdiction for retroactive validation of a prior judgment where the defendant acts to accept the benefits of the judgment. [Citation.]" (*Sullivan v. Bach* (1981), 100 Ill. App. 3d 1135, 1142.)

The court then held that the trial judge had not made any determination of the grounds of the defendant's motion asserting lack of personal jurisdiction. The case was remanded to the trial court for a hearing on the issue of personal jurisdiction, and if the service was not valid, the default was to be vacated.

In *Bradshaw v. Pellican* (1987), 152 Ill. App. 3d 253, this court was presented with a default judgment in a paternity case in which the defendant claimed that he had not been served and that the trial court had erred in denying his petition to vacate the judgment pursuant to section 2—1401 of the Code (Ill. Rev. Stat. 1985, ch. 110, par. 2—1401). The defendant filed a special appearance to quash the service of summons. Thereafter the court entered an order denying defendant's special appearance and converted it to a general appearance. At the same time, the court entered another order setting the cause for hearing on a rule to show cause against the defendant. The court stated as follows:

"In the present case, the court's order recited the agreement of the parties that a deficiency existed and created an installment plan for making up the deficiency. This clearly recognized the validity of the prior proceedings and invoked the court's jurisdiction to alleviate the harshness of a contempt citation. Defendant cannot invoke the court's jurisdiction, then question that jurisdiction on appeal. [Citation.]" *Bradshaw v. Pellican* (1987), 152 Ill. App. 3d 253, 256.

Plaintiff also cited *O'Connell v. Pharmaco, Inc.* (1986), 143 Ill. App. 3d 1061, which involved a case of a default judgment where the defendant was never formally made a defendant before the judgment was entered against him and where the defendant actively participated and directed the litigation and requested affirmative relief from the court when it became apparent that the plaintiff sought to discover assets of the judgment debtor which were held by the defend-

ant. The court observed that the record showed that the defendant was aware that the plaintiffs were attempting to secure a personal judgment against him and, accordingly, refused to set aside the judgment against the defendant on the basis of lack of personal jurisdiction. See also *Washington v. Clayter* (1980), 91 Ill. App. 3d 489, 494; *Community Bank & Trust Co. v. Pavlich* (1980), 84 Ill. App. 3d 1080, 1082; *Farley v. Blackwood* (1978), 56 Ill. App. 3d 1040, 1045.

The facts pertinent to the issue of *in personam* jurisdiction over JoAnn may be summarized as follows: (1) JoAnn testified as a witness at a rule to show cause hearing, at which time Philip's attorney pointed out to the court that as Philip's present wife, what occurred was very important to her; (2) JoAnn was made a party defendant by court order on July 27, 1984, in order to require her to testify and to appear in future hearings; (3) JoAnn attended the October 4, 1984, hearing and started to testify when the court adjourned to chambers for a conference; there was no showing as to whether or not she attended the conference; however, on the return to court, the judge indicated that he had made a proposal which had been accepted; (4) on June 4, 1985, a rule to show cause and sanctions were filed against Philip and JoAnn by Christine's attorney; (5) Philip's attorney (Huszagh) never entered an appearance for JoAnn; however, on August 15, 1985, he was before the court with Christine's attorney in connection with procuring a judge's deed for the subject premises, and at that time, he advised the judge that no provisions were made for JoAnn's separate interest, and he suggested that the subject premises be partitioned; (6) the itemized bill for attorney fees filed by Philip's attorney (Huszagh) set forth many phone calls and conferences with both Philip and JoAnn from June 1983 to October 1985 regarding the court proceedings and the involvement of the subject premises; (7) on November 19, 1985, attorney Perry filed a general appearance for JoAnn, and at that time, he verbally advised the court that he was asserting a one-half interest in the proceeds of the sale for JoAnn; also, at the hearing on Christine's motion to reduce the sale price of the subject premises, he questioned witnesses, introduced evidence, and requested a continuance at the conclusion of the hearing, which was denied by the court; (8) JoAnn's attorney filed an answer on March 22, 1986, to Christine's petition to distribute the proceeds of sale; (9) at no time was any pleading filed in the trial court contesting jurisdiction over JoAnn; and (10) JoAnn's brief in this court asserts that she was never a party in the trial court as she had no justiciable issue with Christine, nor did she ever file an appearance therein.

In view of the foregoing facts, it is clear that this is not a case

where JoAnn did not know what was happening in court. After the October 4, 1984, hearing, she had notice that her interest in the subject premises was involved in these proceedings. Additionally, the many phone calls and conferences between JoAnn, Philip, and his attorney revealed by the fee petition filed by attorney Huszagh clearly demonstrate that JoAnn had adequate opportunity to defend her interest. In spite of these facts and the various orders appearing in the trial court, no attempt was made by JoAnn or her attorney to raise the jurisdictional issue, a general appearance was filed, and even in her brief in this court, the issue is only indirectly addressed by stating that she was not a party and never appeared.

The failure of JoAnn at any stage of this proceeding in the trial court to object to the court's jurisdiction is significant. The appeals in *J. C. Penney Co. v. West* (1983), 114 Ill. App. 3d 644, and *Sullivan v. Bach* (1981), 100 Ill. App. 3d 1135, were remanded to the trial court in order that a hearing could be held to determine the validity of the jurisdictional issue raised by the pleadings. In this case, no such issue is raised by the pleadings in the trial court; this fact is significant, as demonstrated by *Farley v. Blackwood* (1978), 56 Ill. App. 3d 1040, wherein the issue of special appearance was dealt with in the following language:

> "Even were we to accept defendant's contention that no appearance was filed on October 14, 1976, there is no question that *he did not file a special appearance at any time and that he did file a general appearance along with his motions* for stay of execution and to vacate the default judgment and, by so doing, he waived any objection to personal jurisdiction. Moreover, defendant submitted himself to jurisdiction by filing and arguing the motion to stay and by asserting grounds in his motion to vacate ranging far beyond an attack on the court's *in personam* jurisdiction." (Emphasis added.) *Farley v. Blackwood* (1978), 56 Ill. App. 3d 1040, 1045.

The conduct of JoAnn throughout this proceeding, the fact that no pleading was filed contesting the *in personam* jurisdiction of the trial court, and the fact that the pleadings filed by JoAnn sought relief in the trial court lead us to the conclusion that the trial court had *in personam* jurisdiction over JoAnn. Since the trial court had *in personam* jurisdiction over JoAnn, any final orders entered by the trial court may only be attacked by appeal or a petition pursuant to section 2—1401 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—1401). *Supreme Hive Ladies of the Maccabees of the World v. Harrington* (1907), 227 Ill. 511, 525.

■ We must next consider whether this court has jurisdiction to hear this appeal. (*Camp v. Chicago Transit Authority* (1980), 82 Ill. App. 3d 1107.) The jurisdiction of this court to hear an appeal is confined to reviewing appeals from final judgments unless it comes within one of the exceptions for interlocutory orders specified by the supreme court. (*O'Hara v. State Farm Mutual Automobile Insurance Co.* (1985), 137 Ill. App. 3d 131.) A judgment or decree is final and reviewable if it either terminates the litigation between the parties on the entire controversy or some definite part thereof so that, if affirmed, the trial court has merely to proceed with execution. *Petersen Brothers Plastics, Inc. v. Ullo* (1978), 57 Ill. App. 3d 625.

The orders at issue in this case are the court's December 4, 1984, order which placed a lien on the subject premises and required that the proceeds of a sale of the home be distributed to Christine and the July 9, 1985, order directing the conveyance of all of JoAnn's right, title, and interest in the subject premises to Christine via a judge's deed. Regarding both orders, the trial court did not expressly state that either was final and therefore appealable.

The plain language of the court's order of December 4, 1984, directed the disputed property to stand as security for the amount due Christine and ordered all proceeds from the future sale of the property to go toward the payment of the divorce settlement.

The order of December 4, 1984, reads in pertinent part:

"1. That the home of Philip and JoAnn Verdung, located at 23 W 144 Red Oak Drive, Glen Ellyn, Illinois, ***:

*** shall stand as security for the balance remaining due and payable to the plaintiff, Christine Verdung (Riis), for maintenance as specified in the Judgment for Dissolution of Marriage, which amount due is in the sum of $56,900.00 as of October 4, 1984.

2. That, in the event the house is sold, *any remaining balance* will be accelerated and paid off out of the proceeds of the sale; further, that if any arrearage remains at the time the house is sold, such arrearages shall be paid from the proceeds of sale." (Emphasis added.)

Further, the trial court's order of July 9, 1985, for conveyance of the subject premises from JoAnn to Christine via a judge's deed provided in pertinent part as follows:

"(1) *** [T]he real estate described in the order of 12—4—84 at 23 W 144 Red Oak Drive, and owned by JoAnn Verdung shall be conveyed to Christine Verdung via Judge's Deed issued by this Court.

(2) *** Christine Verdung shall immediately list said parcel for sale at fair market [*sic*] of at least $250,000.

* * *

(5) *** [A]ll arrearages [shall be] paid immediately and directly to Christine Riis [Verdung] and the balance owed her shall be placed in escrow at Gary Wheaton Bank, said balance to be paid her in monthly installments equivalent to payments ordered by this court in Judgment for Dissolution of Marriage of 4—9—79."

■ These orders terminated a definite part of this litigation, namely, the interest of JoAnn in the subject premises. All that remained following the July 9, 1985, order, if affirmed, was its execution, namely, securing the judge's deed placing title in Christine. As such, the order was appealable, *i.e.*, subject to the jurisdiction of this court by appeal.

Christine contends that JoAnn's answer to the motion to distribute the proceeds of sale constitutes a collateral attack on the prior court order that divested JoAnn of her interest in the subject premises by judge's deed and that this order was subject to direct attack only by an appeal. In her answer to Christine's motion to reduce the sale price, JoAnn contended that the court's finding of a fraudulent conveyance of the subject premises did not affect her ownership of the undivided one-half interest in the subject premises acquired by the deed in 1980; that accordingly she was entitled to a distribution of one-half of the net proceeds from the sale of the subject property.

■ As noted above, both the December 4, 1984, and July 9, 1985, orders were final, appealable orders. JoAnn's answer to the motion to distribute sale proceeds, filed on March 24, 1986, asserted that she and Christine were owners of the subject premises and that the court's finding on December 4, 1984, of a fraudulent conveyance did not affect her one-half interest therein. However erroneous those orders may have been, JoAnn's remedy was to attack them directly by appeal or by a petition pursuant to section 2—1401 of the Code (Ill. Rev. Stat. 1985, ch. 110, par. 2—1401). She failed to do so and, consequently, has waived her right to appeal from these orders. This was clearly a collateral attack of these orders. In *Lady v. Montgomery Ward & Co.* (1980), 80 Ill. App. 3d 69, the court stated as follows:

"The rule of collateral estoppel is that only void judgments are subject to collateral attack. A judgment is void when either the court rendering it did not have jurisdiction over the parties or subject matter, or the judgment was obtained fraudulently.

***

As a corollary to the rule that the lack of jurisdiction and the presence of fraud are the only proper objects of a collateral attack, erroneous judgments as well as correct ones are protected by the rule of collateral estoppel. However legally incorrect or logically inconsistent a decision may be, a litigant's only remedy is to appeal it. Error, however egregious, cannot be raised in a collateral proceeding. [Citations.]" *Lady v. Montgomery Ward & Co.* (1980), 80 Ill. App. 3d 69, 72-73.

See also *Anna National Bank v. Prater* (1987), 154 Ill. App. 3d 6; *In re Adoption of Schumacher* (1983), 120 Ill. App. 3d 50.

Also demonstrating the finality of the order for the judge's deed is the fact that the sale of the property was closed on the basis of Christine's title established by the judge's deed, and the proceeds of sale were paid by the purchasers to the escrowee. JoAnn claimed a one-half interest in the proceeds of sale on March 22, 1986; she has never filed any pleading asserting a one-half interest in the subject premises, and it was not until March 24, 1986, that JoAnn's pleading claimed a one-half interest in the proceeds of sale. This should have been done when the conveyance of her interest in the subject premises was ordered by judge's deed; however, no appeal was taken from that order within 30 days. Furthermore, JoAnn did not seek any relief from the order for a judge's deed after the appeal time lapsed pursuant to section 2—1401(b) of the Code (Ill. Rev. Stat. 1985, ch. 110, par. 2—1401).

For the foregoing reasons, we find that the trial court erred in awarding JoAnn one-half of the net proceeds of the sale of subject premises for the reason that her answer to the motion to distribute the proceeds of sale constituted a collateral attack on a prior final order of the trial court. We remand this cause to the trial court with directions to vacate the order of March 22, 1986, and for further proceedings consistent with this opinion.

Reversed and remanded with directions.

UNVERZAGT, J., concurs.

JUSTICE REINHARD, dissenting:

I respectfully dissent and would affirm the judgment of the circuit court. Despite the majority's strained attempt to find that the trial court had *in personam* jurisdiction over JoAnn to affect her one-half interest in the property at issue before her general appearance on November 19, 1985, the record clearly demonstrates that prior to her ap-

pearance no complaint requiring relief was ever filed against JoAnn, she was never made a party defendant to the cause, she was never served with process, she did not participate in the proceedings except as a witness, and she did not request the trial court to exercise its *jurisdiction* over her by directing the litigation or seeking affirmative relief. Thus, JoAnn could properly attack prior orders entered before her appearance affecting her rights.

It is essential to the validity of a judgment that the court have both jurisdiction of the subject matter of the litigation and jurisdiction over the parties. (*State Bank v. Thill* (1986), 113 Ill. 2d 294, 308.) Absent a general appearance, personal jurisdiction can be acquired only by service of process in the manner directed by statute. (113 Ill. 2d at 308.) Where a court does not have personal jurisdiction over the defendant, any order it enters against him is void *ab initio* and subject to direct or collateral attack at any time. (*Allied American Insurance Co. v. Mickiewicz* (1984), 124 Ill. App. 3d 705, 707.) A judgment void when entered remains void notwithstanding a subsequent general appearance, and a general appearance does not serve to validate retroactively a judgment void when entered. (*J. C. Penney Co. v. West* (1983), 114 Ill. App. 3d 644, 646.) There is no need to file a special and limited appearance in challenging past jurisdiction unless one wishes to contest the court's prospective jurisdiction as well. *Sullivan v. Bach* (1981), 100 Ill. App. 3d 1135, 1141-42.

As the trial court did not have *in personam* jurisdiction over JoAnn until her appearance on November 19, 1985, the prior orders of the court affecting her property interest are void. The judgment below should be affirmed.