BOARD OF TRUSTEES OF COMMUNITY COLLEGE DISTRICT NO. 508, on its Own Behalf and on Behalf of All Taxing Districts Similarly Situated Within Cook County, Plaintiffs-Appellants, v. EDWARD J. ROSEWELL, as County Treasurer and *ex officio* County Collector of Cook County, *et al.*, Defendants-Appellees.

First District (5th Division)   No. 1—88—3024

Opinion filed December 4, 1992.

Arvey, Hodes, Costello & Burman, of Chicago (Roger Fein and Joel Siegel, of counsel), and Moss & Bloomberg, Ltd., of Bolingbrook (Barry Moss and George Marchetti, of counsel), for appellants.

Jack O'Malley, State's Attorney, of Chicago (Joan Cherry, Susan Condon, and Mark Chester, Assistant State's Attorneys, of counsel), for appellees.

JUSTICE GORDON delivered the opinion of the court:

Plaintiffs, representing all similarly situated taxing districts located within Cook County, filed a class action suit against Cook County and Edward J. Rosewell, in his capacity as Cook County Treasurer (the Treasurer), seeking to recover interest earned from the investment of certain taxes which defendants collected on behalf of plaintiffs. Circuit Court Judge Anthony J. Scotillo ruled the practice of having Cook County retain the interest earned on the taxes violated section 9(a) of article VII of the Illinois Constitution (Ill. Const. 1970, art. VII, § 9(a)) and ordered defendants to turn over the interest earned on the taxes after May 27, 1983.

In 1985, plaintiffs filed two turnover petitions seeking interest from escrows established in three additional cases pending before other circuit court judges in which plaintiffs were not joined as parties. Judge Scotillo denied these petitions on the grounds that he lacked authority over those funds. In 1986, plaintiffs filed two additional turnover petitions, including one seeking interest on various personal property tax escrows pending before other judges and one for interest accruing on Cook County's illegal rate reserve fund. Judge Scotillo denied these petitions without giving reasons. On appeal, plaintiffs ask this court to reverse Judge Scotillo's orders denying each of these turnover petitions. Defendants moved to dismiss the appeal for lack of jurisdiction and cross-appealed from Judge Scotillo's orders awarding attorney fees to plaintiffs' counsel and denying defendants' motion for the release of a particular escrow fund.

FACTS

In 1981, the board of commissioners of the Chicago Ridge Park District filed a class action suit against Cook County and Edward Rosewell in his capacity as Cook County Treasurer seeking injunctive relief and the interest earned from the investment of taxes collected by the Treasurer on behalf of the plaintiff class. The Treasurer had been depositing the interest earned on the collected taxes in the county's general corporate fund.

This class action was subsequently consolidated with another class action filed in October 1982 by the board of trustees of Community College District No. 508; both class actions sought similar relief. The plaintiff class was certified as "all taxing districts as defined in Section 1(12) of the Revenue Act of 1939 [citation] located within Cook County, Illinois," with the exception of Cook County.

In October 1982, the trial court issued a preliminary injunction in the class action suit enjoining Rosewell from distributing the interest earnings received from the investment of real estate and personal property tax collections before those taxes were distributed to the taxing districts. This money was to be kept in a segregated fund. In November 1983, the court appointed a trustee to collect and manage the fund established by the injunction.

On December 14, 1984, Judge Scotillo entered a judgment in favor of plaintiffs pursuant to the Illinois Supreme Court's decision in *Board of Commissioners of the Wood Dale Public Library v. County of Du Page* (1983), 96 Ill. 2d 378, 450 N.E.2d 332 (*Wood Dale I*). Judge Scotillo found that the plaintiff class was entitled to the interest earned on the invested taxes after May 27, 1983, the effective date of *Wood Dale I*, which was determined to apply only prospectively in *Board of Commissioners of the Wood Dale Public Library v. County of Du Page* (1984), 103 Ill. 2d 422, 469 N.E.2d 1370 (*Wood Dale II*). Consonant with *Wood Dale I*, Judge Scotillo found that defendants' practice of retaining the interest on revenues collected for other taxing bodies in the county violated section 9(a) of article VII of the Illinois Constitution (Ill. Const. 1970, art. VII, § 9(a)), which prohibits the use of collected fees to compensate local government employees or to pay for office expenses. The judge determined that the Public Funds Act (Ill. Rev. Stat. 1981, ch. 85, par. 902) mandated the award of the interest to plaintiffs.

Judge Scotillo appointed an impartial auditor to examine the relevant accountings and report to the court whether all plaintiffs' interest was properly accounted for by defendants. The auditor's reports of February 25, 1985, and April 2, 1985, indicated that escrows had been established in three separate lawsuits: Illinois Central Gulf R.R. Co. v. Department of Local Government Affairs (Cir. Ct. Cook Co.), Nos. 79—L—7854 and 71—CH—6257 (Illinois Central); Amoco Oil Company v. Rosewell (Cir. Ct. Cook Co.), No. 81—CH—8365 (Amoco Oil); and People of the State of Illinois v. Illinois Bell Telephone Co. (Cir. Ct. Cook Co.), No. 80—L—60002 (Illinois Bell). These cases involved questions of taxpayer liability wherein the taxpayer paid the disputed taxes into an escrow. None of the plaintiffs here, either as a class or individually, were joined therein as parties nor was an issue raised in those cases concerning entitlement of any taxing districts to the interest earned on the escrowed funds. Final judgments in those cases were entered in favor of Cook County by circuit court judges other than Judge Scotillo and pursuant thereto the interest from these escrowed funds was ultimately paid over to the county.

In April and June of 1985, plaintiffs filed two petitions before Judge Scotillo in the class action suit seeking the turnover of the escrow interest earned on the deposited funds in those three cases. In their turnover petitions, plaintiffs contended that the interest earned on the escrowed funds fell within the scope of Judge Scotillo's December 14, 1984, order in the class action suit.

The first of these "turnover petitions" was filed on April 9, 1985, and sought interest earned on challenged real estate taxes in two cases, Illinois Central and Amoco Oil. In Illinois Central, which was pending before Judge Earl Arkiss, the dispositive issue was whether the railroad property in question was subject to assessment and taxation by the county. In that case, the railroad paid the amount in dispute into an escrow account pending the ultimate disposition of its case. The interest on the deposited funds amounted to $3,390,111 according to the auditor appointed by Judge Scotillo. On November 15, 1983, Judge Arkiss entered a judgment against Illinois Central and, consistent with the preexisting practice in Cook County, ordered the money in escrow to be paid to the county. The order provided that the Treasurer was to pay all the interest accrued on the escrow accounts into the general corporate fund of Cook County in accordance with section 224 "in full payment and satisfaction of all penalties that have or may have accrued thereunder, and all other penalties whatsoever." Ill. Rev. Stat. 1989, ch. 120, par. 705.

Amoco Oil, which was then pending before Judge Joseph M. Wosik, concerned the taxpayer's potential liability for back taxes on four highway oases it leased from the Toll Highway Authority. On October 27, 1981, the taxpayer placed the disputed amount in an escrow. In June 1983, the trial court in Amoco Oil ordered that the escrow be dissolved and the principal portion of the fund be disbursed in part to the Illinois State Toll Highway Authority and in part to the county collector to be distributed according to law. The interest earned on the escrow account would be distributed in part to the Illinois State Toll Highway Authority, in part to the county collector, and in part returned to the taxpayer. Specifically, the order provided that $153,884 of the interest was to be "distributed by the Collector pursuant to law." In the order, the court retained jurisdiction for the purpose of interpreting and enforcing its order.

The auditor appointed by Judge Scotillo determined that "most of the $153,884" in Amoco Oil was earned before May 27, 1983, the effective date of *Wood Dale I* which, as previously noted, was established in Judge Scotillo's order as the cutoff date for determining which interest was to be paid to the plaintiff class. This interest was recorded by the Treasurer as having been earned on undistributed

tax accounts and was subsequently turned over by the Treasurer to the trustee in this class action suit. Defendants claim that the turnover of this interest to Judge Scotillo's trustee was made mistakenly.

The second turnover petition, filed before Judge Scotillo on June 10, 1985, sought interest earned from challenged taxes contained in an escrow account in Illinois Bell which was also presided over by Judge Arkiss. This was a consolidation of 1,300 cases involving 1978 contested personal property taxes assessed and extended against the personal property of Illinois Bell. On October 25, 1982, Judge Arkiss ordered Illinois Bell to turn over a total of $26,311,934.90 to the county. The amount represented approximately $18 million in delinquent taxes and $8 million in statutory penalties. The Illinois Bell money was subsequently segregated into separate escrow accounts with the money representing delinquent taxes placed in one account and the funds representing penalties placed in another account.

Judge Arkiss' order of October 25, 1982, provided that the deposited funds were to be kept segregated and were not to be distributed to any governmental body until final disposition or further court order, stating that the deposited funds "shall remain subject to the jurisdiction and supervision of this Court." The order further specified that if a judgment was entered against the taxpayer, the interest on the account established in Illinois Bell would be paid to the county "in full payment and satisfaction of the aforesaid taxes, interest and penalties on the subject of personal property." In June 1983, Judge Arkiss entered a final judgment in favor of the county in the amount initially used to establish the fund. The June 1983 order also provided that the Cook County collector could disburse the money held in escrow to the "appropriate recipients pursuant to the applicable provision of the Revenue Act."

On August 29, 1985, Judge Scotillo entered an order in which he declined to exercise jurisdiction over either of the turnover petitions and denied both of them "without prejudice to submit similar petitions wherever appropriate." Judge Scotillo stated that, while plaintiffs should be entitled to the interest, "they were not in the proper forum." He suggested that intervention by the plaintiffs in the other cases was the proper method of obtaining the interest. Upon plaintiffs' motion for a Rule 304(a) certification of that order, Judge Scotillo entered an order on September 27, 1985, stating "that there is no just reason for delaying enforcement or appeal of the order entered August 29, 1985." An appeal was taken promptly from this order. That appeal was subsequently dismissed on May 1, 1986, by this court for the reason that "the trial court's order [did] not finally adjudicate the rights and claims of the parties."

On March 31, 1986, while the appeal of Judge Scotillo's August 29, 1985, order was still pending, plaintiffs here filed a petition before Judge Wosik, for leave to intervene and to modify orders in Amoco Oil. On April 9, 1986, plaintiffs filed a similar petition before Judge Arkiss in both Illinois Central and Illinois Bell. The parties agreed to defer proceedings on the Amoco Oil intervention petition until after the Illinois Central and Illinois Bell intervention petitions were adjudicated. On January 22, 1987, Judge Arkiss denied plaintiffs' petitions to intervene in Illinois Central and Illinois Bell as time barred because the petitions were filed more than two years after the final judgments were entered in those cases. An appeal was taken from Judge Arkiss' ruling, which was affirmed in *Illinois Central Gulf R.R. Co. v. Department of Local Government Affairs* (1988), 169 Ill. App. 3d 683, 691, 523 N.E.2d 1048. Plaintiffs' petition for leave to intervene and modify orders in Amoco Oil is still pending in the circuit court without a determination.

In April 1986, plaintiffs filed five additional turnover petitions, only two of which are included here in plaintiffs' notice of appeal. The first, entitled "Petition of Plaintiff Class for Turn Over of Interest Earnings From Certain Personal Property Tax Escrow Funds," sought the interest earned on assorted personal property tax escrows which were pending before other judges and only identified by brief title in this record. These funds were discovered by Judge Scotillo's auditor after December 14, 1984, but not included in plaintiffs' 1985 petitions. The plaintiffs contended that the interest from these accounts, which amounted to approximately $20 million, was within the jurisdictional reach and scope of Judge Scotillo's December 14, 1984, order.

The second April 1986 turnover petition included in this appeal sought the interest earned on Cook County's illegal rate reserve fund. This reserve, established pursuant to section 194 of the Revenue Act of 1939 (Ill. Ann. Stat., ch. 120, par. 675 (Smith-Hurd, Supp. 1992)) is designed to meet claims that arise from litigation over the tax rates or assessments of prior years. The interest earnings on this account amounted to approximately $1,200,000 from May 1983 to May 1985. Again, the plaintiffs argued that their rights to the interest earned on this reserve were encompassed by Judge Scotillo's December 14, 1984, order.

The plaintiff class had previously tested the legality of the illegal rate reserve fund in Maynard v. Cook County (Cir. Ct. Cook Co.), No. 70—L—16955, where the court upheld the establishment of the reserve as authorized under section 194. In that case, even though the plaintiffs included all the taxing districts in Cook County with

the exception of the county itself, the plaintiff class did not challenge or raise the question of their entitlement to the interest earnings on the reserve.

Defendants moved to strike the April 1986 turnover petitions, arguing that these funds were not included in the earlier pleadings, were not covered by the December 14, 1984, order and were not cited in the notices mailed to class members on January 4, 1985. On September 10, 1986, that motion was granted by Judge Scotillo.

On April 20, 1987, plaintiffs' counsel filed a petition for attorney fees for services rendered to the plaintiff class between July 1 and December 31, 1986. The petition sought approximately $50,000, which included a request for $16,667.50 for fees connected with the plaintiffs' attempts to intervene in Illinois Central and Illinois Bell. Defendants filed an objection to the petition contending that the fees should not be awarded to plaintiffs' counsel for the attempts to intervene in the Illinois Central and Illinois Bell cases.

On September 2, 1987, Judge Scotillo entered an agreed order of distribution which established a reserve fund of $300,000 for fees and expenses of the trustee, auditor, or attorneys of the plaintiff class. This order provided that the plaintiff class was to receive $13,237,620 "representing the balance due of their *pro rata* share of the interest earned from May 27, 1983 through January 31, 1987," on undistributed taxes collected on its behalf. The order further provided that the interest from the Amoco Oil escrow, which had accrued to $203,313 and was still being contested by the parties, was to be held by the trustee until further order of the court.

On December 9, 1987, Judge Scotillo awarded plaintiffs' counsel fees for the work performed in the failed intervention attempts. The order stated that the court encouraged the filing of the intervention petitions and contemplated the award of attorney fees for the filing of the petitions. This order also included a finding that there was no just reason to delay enforcement or appeal.

On April 6, 1988, plaintiffs submitted another petition, this one covering services rendered for the year of 1987, which included a claim for additional fees for work performed with respect to the intervention proceedings. All parties were given 14 days to file objections to the petition for fees. No written objections were filed. However, in their brief in support of their cross-appeal, defendants claim to have orally objected to the award of these fees. In an order entered on May 18, 1988, Judge Scotillo, noting that "no objections having been filed," again awarded plaintiffs' counsel additional fees for work on Illinois Central and Illinois Bell.

On March 25, 1988, defendants filed a motion asking Judge Sco-

tillo to release the Amoco Oil interest from the trustee to the Cook County Treasurer. The motion was predicated on the fact that Judge Scotillo had already stated that he would not adjudicate the matter. Defendants urged that the funds had been mistakenly transferred to Judge Scotillo. Plaintiffs agreed to the request that the interest be returned to the Cook County Treasurer to be held there in a segregated account until a determination of entitlement to the interest was made by a court. On September 7, 1988, Judge Scotillo entered an order to that effect, stating that "[Amoco] is over as far as I'm concerned."

The September 7, 1988, order provided that the Treasurer was to hold the Amoco Oil escrow interest in a segregated account until "further order of court." As originally submitted by plaintiffs, the order provided that the money was to be held by the Treasurer until "there has been a final judicial determination as to whether that account should be distributed to the plaintiff class (or appropriate members thereof) or to the County of Cook." That portion of the typewritten order was crossed out in pen and the "further order of court" language was substituted in its place. The September 7, 1988, order also stated that the ultimate rights of the parties had been adjudicated and that the court "has not retained jurisdiction for future determination of any matters of substantial controversy. The only matter left for future determination is the awarding of trustee's and attorneys' fees to be paid from the escrow established [by the order of September 2, 1987,] for that purpose." This order also contained a recitation that it was "a final and appealable order."

Plaintiffs' present appeal is taken from the three foregoing orders of Judge Scotillo dated August 29, 1985, September 10, 1986, and September 7, 1988. Briefly recapitulated, the August 29, 1985, order denied plaintiffs' turnover petitions in the Illinois Central, Amoco Oil and Illinois Bell cases. The order of September 10, 1986, granted defendants' motion to strike the 1986 turnover petitions which sought interest earned on the various pending personal property tax escrows and upon the illegal rate reserve. The order of September 7, 1988, among other things, directed the trustee in the class action to transfer the Amoco Oil interest to the Treasurer, "until further order of court." Defendants filed a cross-appeal on October 21, 1988, appealing from that portion of Judge Scotillo's September 7, 1988, order which restricted the Treasurer's ability to distribute the Amoco Oil funds until "further order of court." Defendants also cross-appeal the award of attorney fees to plaintiffs in the December 1987 and May 1988 orders for services rendered in the attempt to intervene in Illinois Central and Illinois Bell. Preliminarily, defendants have moved to dismiss plaintiffs' appeal on jurisdictional grounds.

OPINION

The first issue we must address is our jurisdiction. Defendants argue that this court lacks jurisdiction to hear the plaintiffs' appeal because no final judgment has been entered. Correspondingly, plaintiffs contend that defendants' cross-appeal from the two orders awarding attorney fees is untimely. We agree that proper appellate jurisdiction to review the appeal and cross-appeal is lacking at this time.

Although plaintiffs rely on Illinois Supreme Court Rule 301 (134 Ill. 2d R. 301) as their sole jurisdictional basis, we must first examine the appealability of each order individually pursuant to Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)). As shall be discussed below, if Rule 304(a) jurisdiction attached at any time to any of the claims, we would then have to determine whether the time for filing an appeal with respect to such claims has since lapsed. As shall be discussed below, if the time for appeal lapsed under Rule 304(a), such lapse would preclude any subsequent appeal under Rule 301 as well. *In re Custody of D.A.* (1990), 201 Ill. App. 3d 810, 816, 558 N.E.2d 1355.

Illinois Supreme Court Rule 304(a) provides in part:

"If multiple parties or multiple claims for relief are involved in an action, an appeal may be taken from a final judgment as to one or more but fewer than all of the parties or claims only if the trial court has made an express written finding that there is no just reason for delaying enforcement or appeal." (134 Ill. 2d R. 304(a).)

Thus, in addition to the requirement that the order be final as to the individual claim or party involved (*Peterson v. Tazewell County* (1975), 29 Ill. App. 3d 915, 330 N.E.2d 888), it must contain an express written finding that there is no just reason for delay of enforcement or appeal. In *In re Application of the Du Page County Collector* (1992), 152 Ill. 2d 545, the Illinois Supreme Court recently reexamined the written finding requirement of Rule 304(a). The court distinguished between a judgment which confers a legal right and a judgment which defeats a claim or was in the nature of a dismissal. According to the court, the written finding for a judgment which conferred a legal right would satisfy Rule 304(a) if the finding referred to either the judgment's immediate appealability or immediate enforceability without requiring that it refer to both. If the judgment was in the nature of a dismissal, the order must refer to the judgment's appealability to satisfy Rule 304(a). We will examine the appealability of each of the orders under Rule 304(a) in light of this decision.

■ The September 10, 1986, order in which Judge Scotillo granted defendants' motion to strike the plaintiffs' turnover petitions covering the interest on the 1986 personal property tax escrows and the illegal

rate reserve does not contain any language concerning the appealability or enforcement of the order. Consequently, review of this order under Rule 304(a) was never possible.

■ The September 7, 1988, order recites that it is a "final and appealable order." It is now clear from *In re Application of the Du Page County Collector* that the deletion of "enforceability" language from an order will not preclude its appealability. Moreover, it would not seem that the failure to include the "no just reason for delay" language is of consequence since the fact that the order is "immediately" appealable is readily inferable from the recitation that it is final and appealable. However, as already discussed, the formal sufficiency of the written certification under Rule 304(a) is not dispositive if the order which is certified is not final. The mere recitation of finality cannot transform a nonfinal order into a final one. (See *People ex rel. Valle v. Valle* (1983), 113 Ill. App. 3d 682, 447 N.E.2d 945; *Mitrenga v. Martin* (1982), 110 Ill. App. 3d 1006, 443 N.E.2d 268.) As previously noted, in the order of September 7, 1988, the court retains jurisdiction over the Amoco Oil escrow, ordering that the fund be held by the Treasurer until further order of court. The order does not determine which party is entitled to the fund. Consequently, as shall be more fully discussed in connection with the issues raised under Rule 301, regardless of the sufficiency of the certification language, this order is not final and therefore not appealable.

The August 29, 1985, order refers to both the immediate enforcement and appealability of the order, thus unequivocally satisfying the written findings requirement of Rule 304(a). However, as pointed out earlier, plaintiffs' appeal from this order was dismissed in May 1986 on the grounds that it was not final because plaintiffs' intervention petitions in Illinois Central, Amoco Oil, and Illinois Bell had not yet been denied. The intervention petitions in Illinois Central and Illinois Bell have, however, been denied since then by Judge Arkiss on January 22, 1987. On April 28, 1988, the appellate court in *Illinois Central Gulf R.R. Co. v. Department of Local Government Affairs* (1988), 169 Ill. App. 3d 683, 523 N.E.2d 1048, affirmed those denials. The mandate in that appeal was issued subsequently on July 19, 1988.

Thus, although not final when entered, Judge Scotillo's order of August 29, 1985, achieved finality as to Illinois Central and Illinois Bell when the denial by Judge Arkiss of the plaintiffs' intervention petitions in those cases was affirmed on appeal in April 1988 or, at the latest, when the mandate issued on July 19, 1988.

This leads us to the question of whether a Rule 304(a) certification, correct in form, of an order which did not otherwise possess

finality when originally certified, would require a recertification if and when finality is achieved. If the certification remained valid, the time for plaintiff to appeal the order would have lapsed as the notice of appeal was not filed until October 6, 1988, more than six months after the appellate court affirmed Judge Arkiss' denial of the intervention petitions and more than three years after the certification was entered.

However, it is manifest from the face of Rule 304(a) that recertification would be required after finality is achieved. Rule 304(a) provides that the time for filing a notice of appeal shall be as provided in Rule 303 (30 days) with "the entry of the required finding *** treated as the date of the entry of the final judgment." (134 Ill. 2d R. 304.) If subsequent events occurring after entry of the order and its Rule 304(a) certification could render the order final without requiring recertification then, if those events would occur more than 30 days after such initial certification, all avenues of appeal would be lost without any window of appealable time. See *In re Custody of D.A.* (1990), 201 Ill. App. 3d 810, 816, 558 N.E.2d 1355 ("If a Rule 304(a) finding is made to an order which is in fact final, the affected party loses the right to appeal by waiting until the termination of the remainder of the case").

■ Our determination is consistent with the analogous situation where a notice of appeal is filed before the judgment or order being appealed is actually final. In those instances, courts have consistently held that once the order becomes final, a new notice of appeal must be filed and that the prematurely filed notice cannot be resuscitated. (*In re Marriage of Roberts* (1980), 84 Ill. App. 3d 538, 406 N.E.2d 1; *Grissom v. Buckley-Loda Community Unit School District No. 8* (1973), 11 Ill. App. 3d 55, 296 N.E.2d 624.) Likewise, under Rule 304(a), in order to be valid, the certification must be made at the time of, or after the entry of a final judgment.

■ We therefore conclude that none of these orders are individually appealable, in whole or in part, under Rule 304(a). But we also conclude that because the Rule 304(a) certification was invalid when made, the orders appealed from are not otherwise time barred. We must therefore proceed to examine the appealability of the orders under Rule 301.

Defendants contend that appellate jurisdiction cannot attach under Rule 301 because less than all of the disputed claims among the parties have yet been resolved. Specifically, defendants urge (1) that under Judge Scotillo's order of September 7, 1988, the dispute over the Amoco Oil escrow is still pending without final determination, the court having retained jurisdiction until "further order of

court," and (2) that under that order the trial court retained jurisdiction over attorney fees.

■ Appellate jurisdiction is confined to reviewing final judgments unless the order to be reviewed comes within one of the exceptions for interlocutory orders specified by the supreme court. (*In re Marriage of Verdung* (1987), 162 Ill. App. 3d 374, 515 N.E.2d 454.) Under Rule 301, a judgment is considered final if it "finally disposes of the rights of the parties either upon the entire controversy or upon some definite and separate branch thereof." (*Tyler v. Tyler* (1992), 230 Ill. App. 3d 1009, 1011, 596 N.E.2d 119; see also *In re J.N.* (1982), 91 Ill. 2d 122, 127, 435 N.E.2d 473 (final judgment "decides the controversy between the parties on the merits and fixes their rights, so that, if the judgment is affirmed, nothing remains for the trial court to do but to proceed with the execution").) A judgment is traditionally defined as a determination made by the court on the issues presented by the pleadings which ascertains and fixes absolutely the rights of the parties in the lawsuit. *Wold v. Bull Valley Management Co.* (1981), 97 Ill. App. 3d 516, 423 N.E.2d 201.

Plaintiffs place emphasis on both Judge Scotillo's oral declaration that the case was over and on the language of the September 7, 1988, order which provided that "the ultimate rights of the parties have been adjudicated" as well as its recitation that it was "final and appealable." The appealability of an order, however, is determined by its substance rather than its form. (*Boonstra v. City of Chicago* (1991), 214 Ill. App. 3d 379, 574 N.E.2d 689; *In re Estate of Hopkins* (1988), 166 Ill. App. 3d 652, 520 N.E.2d 415.) Furthermore, the language of an order cannot transform nonfinal orders into final and, consequently, appealable orders. (See *People ex rel. Valle v. Valle* (1983), 113 Ill. App. 3d 682, 447 N.E.2d 945; *Mitrenga v. Martin* (1982), 110 Ill. App. 3d 1006, 443 N.E.2d 268.) As such, Judge Scotillo's oral statements and the portion of the order which states that the order is final and appealable cannot predetermine a finding that the September 7, 1988, order is final if finality is, in fact, lacking.

Moreover, even the trial judge himself recognized the jurisdictional problems with this appeal. The report of proceedings of September 7, 1988, is replete with discussions as to how the order should be written in order to gain appellate review. Judge Scotillo stated, "it may be interlocutory it may be final. *** Good luck to each side. You both want appellate review. *** [T]he Appellate Court may just throw you out and say no, if it's not final and appealable just because the Judge said it was. I appreciate that."

Plaintiffs concede that the September 7, 1988, order does not determine or resolve the issue of entitlement to the Amoco Oil funds.

The September 7, 1988, order only required the trustee to turn over the Amoco Oil funds to the Treasurer where such funds would be kept until further order of court. The plaintiffs are attempting to use an order transferring temporary custody of the funds in the still pending Amoco Oil case to form the jurisdictional cornerstone of their appeal. We note, however, that the September 7, 1988, order does no more than alter the temporary custody of the funds; the rights of the parties to the ultimate distribution of the funds still remain to be adjudicated.

In response to defendants' argument that Judge Scotillo has retained jurisdiction over the Amoco Oil funds, plaintiffs contend that transfer of the case to another judge to resolve the issue was "clearly contemplated" by Judge Scotillo. Plaintiffs argue that the "compelling factor" is that Judge Scotillo decided that he did not have jurisdiction to make the final determination over the Amoco Oil fund. Plaintiffs further contend that Judge Scotillo did not retain jurisdiction over the Amoco Oil fund since the order did not expressly provide for such retention of jurisdiction.

Specifically, plaintiffs point out that the order states that the Amoco Oil funds were to be held by the Treasurer until "further order of court" rather than further order of "this/the court." This contention is quite tenuous since the mere absence of the word "the or this," without further elaboration, is incapable of effecting a transfer of the case by Judge Scotillo. However, even if Judge Scotillo had explicitly transferred the case to another court, the September 7, 1988, order cannot be considered a final order. (See *Voiland v. Warsawsky* (1989), 182 Ill. App. 3d 332, 538 N.E.2d 764.) In *Voiland*, the plaintiff filed a complaint in the small claims division of Kane County seeking the return of a $500 security deposit allegedly held by the defendant under an apartment lease agreement. The defendant filed a motion asking that the case be transferred to Cook County because Kane County was an improper venue and seeking attorney fees and costs, on the grounds that the plaintiff had fixed venue in Kane County in bad faith. The court in Kane County ultimately transferred the matter to Cook County, but refused to award attorney fees. In its *sua sponte* dismissal of the appeal for lack of jurisdiction the court stated:

> "The order appealed from, transferring the cause to Cook County and denying attorney fees, is not a final judgment appealable as of right pursuant to Supreme Court Rule 301 [citation]. The order does not terminate the litigation, as the merits of the dispute over plaintiff's security deposit remain to be resolved in the circuit court of Cook County." (*Voiland*, 182 Ill. App. 3d at 335.)

(See also *Village of Burnham v. Cook* (1986), 146 Ill. App. 3d 124, 496 N.E.2d 1034 (wherein the court determined that it lacked jurisdiction over an appeal of a transferor court's order declaring a village ordinance invalid because the defendant's implied-consent petition for a hearing was still pending in the transferee court).) Accordingly, since ultimate entitlement to the Amoco Oil funds is yet to be decided, the September 7, 1988, order is not final and therefore not appealable.

We note, however, contrary to defendants' contention, that we would not be inclined to deny jurisdiction merely on the grounds that the issue of additional attorney fees was left open in the September 7, 1988, order.

■ We recognize the general rule that where the trial court retains jurisdiction for a future award of attorney fees, no final judgment will be present. (*Marsh v. Evangelical Covenant Church* (1990), 138 Ill. 2d 458, 563 N.E.2d 459; *Mars v. Priester* (1990), 205 Ill. App. 3d 1060, 563 N.E.2d 977.) However, this rule does not apply where the fees are not sought from an opposing party. The case of *Northern Trust Co. v. Upjohn Co.* (1991), 213 Ill. App. 3d 390, 572 N.E.2d 1030, is in point. There, the trial judge had retained jurisdiction over the distribution of the judgment award to cover the plaintiff's cost of litigation pursuant to local Circuit Court Rule 6.4, which establishes the procedures to be used by judges in determining expenses and attorneys' compensation in cases involving minors and incompetents. In considering whether there was appellate jurisdiction, we determined that the issue of attorney fees was not a claim under Rule 304(a) because, among other things, the request for fees was not made to the opposing party, but rather to the court which was to award the fees from the judgment already received by the plaintiffs in that case. Here too, fees were not awarded against defendants because such fees were never sought from them. Rather, the fees are to be paid from an escrow which was previously established for just such a purpose with money already awarded to the plaintiff class by Judge Scotillo.

As in *Northern Trust*, this factor distinguishes this case from *Hamer v. Lentz* (1987), 155 Ill. App. 3d 692, 508 N.E.2d 324, and *Hise v. Hull* (1983), 116 Ill. App. 3d 681, 452 N.E.2d 372, cited by the defendants, because in those cases fees were sought from the opposing parties. Thus, in this case the resolution of the fee issue is incidental to the dispute between the parties. *Cf. Brotherhood Mutual Insurance Co. v. Roseth* (1988), 177 Ill. App. 3d 443, 448, 532 N.E.2d 354 ("The filing of a motion for attorney fees after a judgment in the principal action is an incidental or collateral matter; it is not a mo-

tion attacking the judgment and therefore does not affect the judgment appealed from"); *Servio v. Paul Roberts Auto Sales, Inc.* (1991), 211 Ill. App. 3d 751, 570 N.E.2d 662 (motion for fees under consumer fraud statute raised claims collateral to the underlying action and independent of the judgment entered and therefore did not preclude the appellate court from exercising jurisdiction over the appeal in the principal action).

Accordingly, since the complete controversy between the parties has not yet been resolved, this appeal must be dismissed for lack of finality.

■ We must now proceed to determine our jurisdiction to entertain the defendants' cross-appeal. With respect to defendants' cross-appeal from the portion of the September 7, 1988, order which purports to exercise control over the Amoco Oil funds, we have already determined that we do not have jurisdiction to review that order because it lacks finality. However, defendants also appeal from two additional orders, one entered on December 9, 1987, and the other, on May 18, 1988, which awarded fees to plaintiffs' counsel for services rendered in the attempt to intervene in Illinois Central and Illinois Bell. The December 9, 1987, order contains a Rule 304(a) certification; the May 18, 1988, order does not. Plaintiffs contend that defendants' cross-appeal of the December 9, 1987, order was not timely filed since the order contained a proper Rule 304(a) certification and was not appealed within 30 days. They further contend that defendants have waived the right to appeal the May 18, 1988, order because they failed to object to the award in the trial court. Additionally, plaintiffs argue that defendants lack standing to challenge any of the fee awards.

We note at the outset that we do not have jurisdiction over the cross-appeal of the May 18, 1988, order for the same reasons that deprive us of jurisdiction over the primary appeal and for the same reasons that deprive us of jurisdiction over that part of the September 7, 1988, order of Judge Scotillo. As we discussed, jurisdiction is lacking under Rule 301 since no final judgment disposing of all pending disputes has been entered in this case. Moreover, with respect to the December 9, 1987, order which contained a Rule 304(a) certification, the dispositive principles that deprive us of jurisdiction over the cross-appeal have already been discussed earlier in the context of the primary appeal.

It is well established that if a Rule 304(a) finding is made and the order is in fact final, "the affected party loses the right to appeal by waiting until the termination of the remainder of the case." (*In re Custody of D.A.* (1990), 201 Ill. App. 3d 810, 816, 558 N.E.2d 1355,

citing *In re Johnson* (1985), 134 Ill. App. 3d 365, 480 N.E.2d 520.) As such, if the order was final when entered, the time for appeal of that order would have lapsed and the defendants' cross-appeal would be untimely. If an order is not final, the inclusion of the Rule 304(a) language does not render it appealable. (*Metzger v. Fitzsimmons* (1988), 175 Ill. App. 3d 674, 529 N.E.2d 1179.) As defendants note, the December 9, 1987, order reserves the right for the class counsel to seek additional fees. In fact, the issue of attorney fees is one of the two issues pending in the trial court.

Furthermore, with respect to the May 18, 1988, order, proper jurisdiction is not present under Rule 304(a) because that order lacks any Rule 304(a) certification. Moreover, if proper jurisdiction was present, we would conclude, in agreement with plaintiffs, that defendants have waived their right to appeal the May 18, 1988, order because they failed to object to the award of fees in the trial court. The May 18, 1988, order clearly states "[n]o written objections having been filed." Defendants claim to have orally objected to the award; however, the record does not contain any indication that this objection was made.

In addition to arguing that defendants' cross-appeal is untimely, plaintiffs claim defendants lack standing to contest the award of attorney fees. We agree. Generally, to have standing a party must show "some injury in fact to a legally recognized interest." (*In re Marriage of Rodriguez* (1989), 131 Ill. 2d 273, 280, 545 N.E.2d 731.) In order to determine whether a party has standing, the court must determine whether the party would be benefitted by the relief granted. *Rodriguez*, 131 Ill. 2d at 280.

As previously noted, defendants have suffered no injury nor will they benefit from a reversal of the judgment because the fees came from a fund established from money already awarded to the plaintiff class. (*Sampson v. Eastman Kodak Co.* (1990), 195 Ill. App. 3d 715, 552 N.E.2d 1194.) In cases such as this one, where a lump sum in a class action suit has been paid to the class and attorney fees are awarded from that fund, the defendant does not have standing to contest the award of fees, absent a colorable claim to the unclaimed portion of the fund, because it has no interest in the fund. (*Sampson*, 195 Ill. App. 3d at 722, quoting *Copeland v. Marshall* (D.C. Cir. 1980), 641 F.2d 880, 905 n.57 ("In 'common fund' cases, the losing party no longer continues to have an interest in the fund; the contest becomes one between the successful plaintiffs and their attorneys over division of the bounty").) There is no indication or contention that defendants have a colorable claim to any portion of the fund. Absent such a claim, the defendants have no standing to contest the award of fees in this case.

In addition to claiming standing in their own right, defendants contend in their brief that the State's Attorney of Cook County, who represents defendants in this action, has standing to object to the fees on behalf of the people. Judge Scotillo found that the State's Attorney had standing to contest the award of fees. We disagree. The State's Attorney was not a party to the action below nor is he a party to this appeal. There is no indication that the State's Attorney has played any role in these proceedings other than as counsel for defendants. While the State's Attorney has the statutory duty to "commence and prosecute all actions, suits, indictments and prosecutions, civil and criminal, *** in which the people of the State or county may be concerned" (Ill. Rev. Stat. 1989, ch. 34, par. 3—9005(1)), such a duty does not allow it to intermittently step out of its role as defendants' representative and into the role of the protector of the People.

The status of the State's Attorney on appeal would be that of a nonparty. For a nonparty to challenge a decision on appeal, the nonparty must have "some direct, immediate and substantial interest in the subject matter which would be prejudiced by a judgment or benefitted by its reversal." (*Layfer v. Tucker* (1979), 71 Ill. App. 3d 333, 336, 389 N.E.2d 252; see also *People v. Pine* (1989), 129 Ill. 2d 88, 542 N.E.2d 711.) An interest which is "speculative, theoretical, inconsequential or remote" is not sufficient to provide a nonparty with a right to review. (*In re Johnson* (1977), 53 Ill. App. 3d 921, 923, 369 N.E.2d 70.) The State's Attorney does not have any direct or immediate interest in the award of fees. Moreover, if the State's Attorney were determined to have standing in this instance, he would be in the position of representing the very same interests which he has opposed throughout this litigation since the taxpaying districts would be the beneficiaries of any reduction in the award of fees.

Defendants claim that plaintiffs have waived the right to object to defendants' standing. The record reflects that plaintiffs did raise this issue before the trial court. Defendants' argument is apparently based on plaintiffs' failure to appeal from Judge Scotillo's finding that the State's Attorney possessed standing. However, a primary appeal from this ruling is not required to preserve this issue for defensive use against defendants' cross-appeal. (*Cf. Bullman v. Cooper* (1936), 362 Ill. 469, 471-72, 200 N.E. 173; *Mid-West National Bank v. Metcoff* (1974), 23 Ill. App. 3d 607, 319 N.E.2d 336.) For defensive purposes, it is sufficient that plaintiffs raised defendants' lack of standing to the trial court and in the portion of their reply brief which responded to defendants' cross-appeal of the fee award. *Cf. People v. Bradford* (1939), 372 Ill. 63, 22 N.E.2d 691.

Defendants further contend, without any supporting authority, that the orders awarding attorney fees are void and that standing is not necessary to challenge a void order. Even if the law were as defendants claim and standing was not necessary to challenge a void order, the defendants would still be unable to contest the award of fees because the two orders challenged by defendants are not void. Defendants rely on *Fiorito v. Jones* (1978), 72 Ill. 2d 73, 377 N.E.2d 1019, for the proposition that orders awarding such fees for unsuccessful interventions are void. In *Fiorito*, our supreme court reversed an award of fees to *amici curiae* who were not joined in the class action and who represented the interests of private clients. Contrary to defendants' contention, the court in *Fiorito* did not characterize the award of fees as void, but as unauthorized and therefore erroneous. Moreover, our case is factually distinguishable as well. Here, unlike the *amici curiae* in *Fiorito*, the attorneys who received fees were the primary representatives of the plaintiff class. There is no question that the attorneys in this case were representing a named party in the class action suit and, as such, the award of fees is not void. In an attempt to apply *Fiorito* to this case, defendants argue that plaintiffs were not parties to the cases in which they attempted to intervene; the fees in question, however, were awarded from the fund established in the class action suit where plaintiffs were named parties.

Moreover, even if void, an order must be final to be appealable. (See *Moffat Coal Co. v. Industrial Comm'n* (1947), 397 Ill. 196, 73 N.E.2d 423.) There our supreme court stated:

> "A judgment, order or decree of a court that lacked jurisdiction or one that is void for any other reason will be reversed by this court whenever the same is brought before us by any means possible in the particular case; but we can find no provision in any statute and no judicial precedent indicating that a judgment, order or decree which is not final may be reviewed by this court merely because it is, or is alleged to be, null and void." 397 Ill. at 201-02.

See also *Chicago Housing Authority v. Abrams* (1951), 409 Ill. 226, 229, 99 N.E.2d 129 (finding no support for the proposition that "an appeal lies to this court from a void order even though it is interlocutory in character").

As in *Moffat*, the order in this case does not become appealable regardless of its lack of finality solely on the basis of the allegations that the order is void. Such a result would not be consistent with the policies underlying Supreme Court Rules 301 and 304. If an order could be appealed any time merely because a party alleged it was void, piecemeal appeals would result merely by questioning the authority of a court to enter a particular order.

Accordingly, we hold for the above-mentioned reasons that the August 29, 1985, September 10, 1986, and September 7, 1988, orders are not individually appealable under Rule 304(a) nor collectively appealable under Rule 301. We also determine that we lack jurisdiction over the defendants' cross-appeal, and specifically with respect to the fee awards, that defendants lack standing to challenge them.

However, as shall be demonstrated below, even if appellate jurisdiction properly attached, the orders appealed from would warrant affirmance.

Plaintiffs contend that Judge Scotillo was in error when he held that he did not have the authority to decide the merits of the turnover petitions which sought interest from the escrowed funds in Illinois Central, Illinois Bell, and Amoco Oil. According to plaintiffs, Judge Scotillo could have ruled on the turnover petitions because proper personal and subject matter jurisdiction was present. Citing *Kemling v. Country Mutual Insurance Co.* (1982), 107 Ill. App. 3d 516, 437 N.E.2d 1253, plaintiffs define proper subject matter jurisdiction as the power of the "court to hear and decide a case on its merits; not being limited to jurisdiction of the particular case before it, but the class of cases to which the case belongs." The question which is raised by these contentions is the propriety of one circuit judge reviewing, modifying or countermanding the judgments or decrees entered by other trial court judges in completely separate and distinct lawsuits.

There is no question that as part of the same constitutional court of general jurisdiction, each circuit court has equal and concurrent subject matter jurisdiction. (*Lescher v. Barker* (1978), 57 Ill. App. 3d 776, 373 N.E.2d 1007.) Circuit courts are tribunals of general jurisdiction, and even though these courts have various divisions, these divisions are not considered jurisdictional. (*In re Marriage of Schweihs* (1991), 222 Ill. App. 3d 887, 584 N.E.2d 472.) Within the circuit courts, all judges are invested with equal authority regardless of which division they are assigned to at a particular time. *Olsen v. Karwoski* (1979), 68 Ill. App. 3d 1031, 386 N.E.2d 444.

However, this equality of power and authority among the divisions and judges does not provide a license for one judge to ignore orders entered by judges of coordinate authority whether they are in different divisions or different counties. The supreme court has asserted as a general principle that "[o]ne circuit judge may not review or disregard the orders of another circuit judge in the judicial system of this State." *People ex rel. Phillips Petroleum Co. v. Gitchoff* (1976), 65 Ill. 2d 249, 257, 357 N.E.2d 534.

In *Phillips Petroleum*, a circuit court judge in Macon County entered an order consolidating a counterclaim pending in the circuit

court of Madison County with a complaint pending in Macon County. The judge presiding over the counterclaim in Madison County ordered the county clerk not to transmit the record pertaining to the counterclaim to Macon County. Phillips Petroleum sought a writ of *mandamus* requiring the Madison County judge to turn over the record to the Macon County court.

The supreme court noted that the actions were not identical and that there was no substantial similarity between them. (*Phillips*, 65 Ill. 2d at 255.) The court found that two separate actions were present. The complaint would determine liability; the counterclaim indemnity. The court stated that the "pendency before different judges of separate suits involving identical parties and issues is incompatible with the orderly and efficient administration of justice." *Phillips*, 65 Ill. 2d at 257. Accord *People ex rel. East Side Levee & Sanitary District v. Madison County Levee & Sanitary District* (1973), 54 Ill. 2d 442, 298 N.E.2d 177; *In re Marriage of Baltzer* (1986), 150 Ill. App. 3d 890, 502 N.E.2d 459.

This principle applies regardless of the lack of finality of the order entered by the court in which the original action was filed. One court should not compete with another over the same or substantially overlapping causes of action or in the administration of the same *res*. To do so has been held to countermand the dictates of judicial economy and the orderly administration of justice. See, *e.g.*, *People ex rel. East Side Levee & Sanitary District v. Madison County Levee & Sanitary District* (1973), 54 Ill. 2d 442, 298 N.E.2d 177; *In re Marriage of Baltzer* (1986), 150 Ill. App. 3d 890, 502 N.E.2d 459.

In *In re Marriage of Baltzer*, the attorney representing one of the parties in a dissolution proceeding pending in the circuit court of Du Page County withdrew as counsel and filed a petition for fees in the circuit court of Cook County. The former client filed a motion to strike the Cook County proceeding, or in the alternative, require the attorney to pursue the action for fees in Du Page County. The Du Page court entered an order requiring the attorney to pursue the fee action in Du Page. In affirming the trial court's decision, the appellate court reasoned that "[i]t would also appear to be an unnecessary impediment to judicial economy to require a second judge to acquire the knowledge of the proceedings in the dissolution action already known to the judge who has heard it." *Baltzer*, 150 Ill. App. 3d at 896.

In *People ex rel. East Side Levee & Sanitary District v. Madison County Levee & Sanitary District*, the court in Madison County declined to dismiss an action which was duplicative of one already pending in St. Clair County court. In holding the action of the Madison County court to be erroneous, our supreme court stated:

"Suffice it to say that the clearly proper course of action for the Madison County court was to decline jurisdiction in light of the pending St. Clair County litigation in which precisely the same relief could have been sought. [Citations.] Additionally, we believe it appropriate to call to the Madison County court's attention the fact that its acceptance of jurisdiction and issuance of orders conflicting with those of the St. Clair County court was not only clearly erroneous, but that such action can only serve to diminish public respect for the judicial system of this State." (*East Side Levee*, 54 Ill. 2d at 445.)

(See *Coon v. Holtz* (1908), 139 Ill. App. 472.) In *Coon*, an action was filed in Cook County and an interpleader action was filed in Lake County, both seeking a ruling to determine entitlement to specific funds. The *Coon* court declared that the court having first acquired jurisdiction of appellant and of the fund was entitled to retain jurisdiction until a decree was entered. (139 Ill. App. at 475-76.) Although both courts had proper subject matter and personal jurisdiction, the court determined that the "comity of courts requires the Circuit Court of Lake county not to take jurisdiction." *Coon*, 139 Ill. App. at 476.

Although these cases involve courts of co-equal jurisdiction in different counties, the same considerations and rationales apply to administrative problems of parallel actions pending in different administrative divisions of a circuit court. *People ex rel. Kelly, Ketting, Furth, Inc. v. Epstein* (1974), 61 Ill. 2d 229, 231, 335 N.E.2d 430 ("Review of the orders of one judge by another judge of the same court in the same case is neither consistent with the orderly administration of justice nor with our judicial system"); see also *Balciunas v. Duff* (1983), 94 Ill. 2d 176, 446 N.E.2d 242; *In re Marriage of Schweihs* (1991), 222 Ill. App. 3d 887, 584 N.E.2d 472.

This is not to say that an order entered by a judge may never be altered. See *Balciunas v. Duff* (1983), 94 Ill. 2d 176, 446 N.E.2d 242, which reasoned that a successor judge can alter nonfinal orders entered by his predecessor only if he succeeds to the case "in the ordinary course of judicial reassignment," without giving rise to an opportunity to engage in judge shopping. (94 Ill. 2d at 184-85.) Moreover, under *Balciunas*, such a duly assigned successor judge must exercise his authority to modify his predecessor's orders sparingly, after careful consideration and "only if there is a change of circumstances or additional facts which warrant such action." 94 Ill. 2d at 188. Accord *In re Marriage of Falstad* (1987), 152 Ill. App. 3d 648, 504 N.E.2d 908.

This is not the case here, however. The judgments which plaintiffs

seek to modify are those of other circuit court judges who possess equal and coordinate authority to Judge Scotillo, and at the times in issue were still sitting in their original assignments. They were not replaced by Judge Scotillo. Consequently, Judge Scotillo is not the successor of those judges and as such lacks authority to rule on the turnover petitions.

Moreover, in this case, the 1985 turnover petitions with respect to Illinois Central, Illinois Bell and Amoco Oil sought to modify final, rather than interlocutory, judgments which were entered by Judge Arkiss and Judge Wosik in separate and independent actions. Where an order is final and appealable it is not subject to modification even by the judge who entered it unless he reacquires jurisdiction as through a section 2—1401 petition. (See *People v. Williams* (1990), 138 Ill. 2d 377, 563 N.E.2d 385.) These orders provided for ultimate disposition of both principal and interest, which plaintiffs in their turnover petitions sought to have Judge Scotillo modify pursuant to his order of December 14, 1984.

The plaintiffs, however, contend that the injunction entered in October 1982 in the class action suit should control the funds because this injunction was entered prior to the final judgments in those cases. But, this injunctive order was entered after each of the three cases was commenced and after two of the three escrows had been established. Courts which first acquire jurisdiction may protect it by enjoining pursuit of related litigation in other courts of coordinate jurisdiction.

Under the October 20, 1982, preliminary injunction in the class action, Judge Scotillo ordered that the Treasurer "was preliminary [*sic*] enjoined, until further order of court, from *distributing the earnings* received by him on his *investment of real estate and personal property tax collections prior to distribution of said tax collections to the taxing districts.*" (Emphasis added.) Likewise, the final order entered on December 14, 1984, addresses collected tax money. The orders entered by Judge Scotillo only address collected taxes. Prior to the entry of a final order determining liability, the funds in escrow are not collected taxes. As such, the injunction and subsequent final order did not apply to the escrowed funds until a final determination of tax liability was entered. The plaintiff argues that once the final order was entered in these cases, the money became collected taxes and was subject to the preliminary injunction. The plaintiffs' position here ignores the procedural stance of this case. The Illinois Central, Illinois Bell, and Amoco Oil courts did not lose their ability to make a distribution of funds in their possession when they determined liability. These courts had jurisdiction to disburse the funds under

their control. If the plaintiffs wanted a different result, they should have intervened sooner in those cases.

This effort to have Judge Scotillo, in the context of this proceeding (the class action case), collaterally modify or alter the final judgments entered in these other actions constitutes an impermissible collateral attack. The decision of our supreme court in *Malone v. Cosentino* (1983), 99 Ill. 2d 29, 457 N.E.2d 395, is squarely in point. There, a plaintiff filed a class action challenging the constitutionality of certain fines for alcohol-related offenses which were assessed against him in a wholly collateral traffic court proceeding. He chose not to appeal from his traffic court judgment but rather filed a separate class action to enjoin the collection of any such fines. In holding this action to be jurisdictionally barred as an impermissible collateral attack our supreme court reaffirmed the long-standing principle:

"[T]hat when jurisdiction is established a court's judgment 'being thus entered by authority of law, no matter how erroneous it may be, or even absurd—though it be made in palpable violation of the law itself, and manifestly against the evidence—is, nevertheless, binding upon all whom the law says shall be bound by it, that is, upon all parties and privies to it, until it is reversed in a regular proceeding for that purpose. While it remains a judgment, it cannot be inquired into, nor its regularity questioned, in any collateral proceeding.' [Citation.] Once a court with proper jurisdiction has entered a final judgment, that judgment can only be attacked on direct appeal, or in one of the traditional collateral proceedings now defined by statute. Ill. Rev. Stat. 1981, ch. 110, pars. 10—101 to 10—137 (*habeas corpus*); Ill. Rev. Stat. 1981, ch. 110, par. 2—1401 (relief from judgments); Ill. Rev. Stat. 1981, ch. 38, pars. 122—1 to 122—7 (post-conviction hearing)." *Malone*, 99 Ill. 2d at 32-33.

Contrary to plaintiffs' contention, the collateral attack doctrine can be invoked wherever the effect is to alter the judgment in one case through a collateral proceeding, regardless of the full sameness of parties. As the court in *Malone* stated:

" '[However,] a determination of the question whether a particular judgment may be subjected to a collateral attack does not necessarily involve an inquiry regarding the scope and effect of the judgment as a former adjudication upon the facts or causes of action included therein.' (46 Am. Jur. 2d *Judgments* § 399 (1969).)" 99 Ill. 2d at 33-34.

Moreover, plaintiffs were direct participants in Illinois Bell and Illinois Central to the extent that they filed section 2—1401 petitions in those cases seeking leave to intervene. These petitions were subsequently denied. (See *Illinois Central Gulf R.R. Co. v. Department*

*of Local Government Affairs* (1988), 169 Ill. App. 3d 683, 691, 523 N.E.2d 1048 (affirming those denials).) As noted in our earlier quotation from *Malone*, a petition under section 2—1401 is one of the three exclusive statutory means or devices under which collateral attack may be attempted. Plaintiffs failed in their attempt to collaterally attack the judgments in Illinois Bell and Illinois Central through one of those three statutory devices, namely their section 2—1401 petitions. Plaintiffs cannot now expand their collateral attack upon the specific judgments entered in collateral proceedings by asserting their rights to those funds in a more generalized context. This sort of collateral attack was held to be ineffective in *Malone* and is ineffective here. (The case of *Shimkus v. Board of Review* (1983), 117 Ill. App. 3d 826, 454 N.E.2d 36, cited by plaintiffs, is not on point since no attempt was made to change the disposition made by the final order of another judge.)

The same procedural grounds which sustain Judge Scotillo's orders with respect to Illinois Bell, Illinois Central and Amoco Oil are equally applicable to Judge Scotillo's order of September 10, 1986, denying plaintiffs' 1986 turnover petition for interest earned from "certain personal property tax escrow funds."

The rationale underlying Judge Scotillo's decision to deny either of the two 1986 turnover petitions in this appeal is not evident from the record. Likewise, the record contains very little information on the escrowed funds in the pending personal property tax cases which plaintiffs seek to reach with the first of the 1986 turnover petitions. The record does not indicate which court or judge established the escrows, the terms of the various escrows, the current status and character of the funds in such escrows or what if any orders were entered with respect to them. It would appear that this information was not presented to the trial court either. It is well established that the appellant bears the burden of presenting a record which is sufficient to support its claim of error. Neither the trial court nor the reviewing court should be required to speculate about the controlling facts. (*Tomlen Group, Ltd. v. Goldfarb* (1981), 101 Ill. App. 3d 154, 427 N.E.2d 1047; see also *Foutch v. O'Bryant* (1984), 99 Ill. 2d 389, 459 N.E.2d 958.) In the absence of such a record, there is a presumption that the trial court's judgment was in conformity with the law and has a sufficient factual basis. *Munroe v. Brower Realty & Management Co.* (1990), 206 Ill. App. 3d 699, 565 N.E.2d 32.

In any event, the same considerations of judicial economy and for the orderly administration of justice which were discussed with respect to any exercise of jurisdiction by Judge Scotillo over Illinois Central, Amoco Oil and Illinois Bell would apply when dealing with

the escrows encompassed in this 1986 turnover petition. Plaintiffs in this 1986 turnover petition have asked Judge Scotillo to award them interest earned on escrows which were the creation of, and under the control of, other judges of coordinate rank and authority. Not only would such an award clearly have interfered with the orderly administration of justice as previously discussed, it would force the trustee of the particular escrow to choose which order of a circuit court judge should be disobeyed. Even if no final order was entered in those cases, an order requiring that interest in those escrows be turned over to plaintiffs, although technically within Judge Scotillo's jurisdictional authority, would under these circumstances constitute an abuse of discretion. See *Phillips Petroleum v. Gitchoff*, 65 Ill. 2d 249, 357 N.E.2d 534; *People ex rel. East Side Levee & Sanitary District v. Madison County Levee & Sanitary District*, 54 Ill. 2d 442, 298 N.E.2d 177; *Balciunas v. Duff*, 94 Ill. 2d 176, 446 N.E.2d 242.

Moreover, the record does not disclose whether any of the orders entered in any of the personal property tax escrows encompassed under the 1986 petition were final. If there were final orders entered, then just as in the case of Illinois Bell and Illinois Central, Judge Scotillo would have a jurisdictional impediment in reaching those funds to the extent that it would necessitate a change or modification of those orders. Under *Malone*, such an attempt would constitute an impermissible collateral attack.

Plaintiffs' second 1986 petition seeks interest earned on the county's illegal rate reserve fund. Unlike the other funds sought in plaintiffs' turnover petitions, the illegal rate reserve was not established by the authority of any judge, but is a direct creation of statute. Likewise, the reserve is not composed of funds awaiting a determination as to whether they are owed as taxes, but rather is composed entirely of collected taxes from the outset.

Defendants argue that the case of Maynard v. Cook County (Cir. Ct. Cook Co.), No. 70—L—16955, specifically dealt with this fund and that therefore *res judicata* bars plaintiffs' petition. Defendants' argument appears to have merit as the parties involved in this case and Maynard are identical and because plaintiffs' challenge to the legality of the fund in Maynard would have permitted them to claim entitlement to the interest on those funds as well. (See *City of Peoria v. Peoria City Lines, Inc.* (1962), 24 Ill. 2d 457, 182 N.E.2d 164.) There, the court stated:

> " 'The validity of the ordinance *** was involved in the case of *People v. Martin* [citation] and this court held it valid. That case conclusively settles the validity of the ordinance *regardless whether the specific objection to said ordinance now insisted upon*

*was raised in that case or not.* The validity of the ordinance cannot be thus attacked by the same parties by piecemeal although the action may be in a different form.' " (Emphasis in original.) (24 Ill. 2d at 463-64, quoting *Martin v. McCall* (1910), 247 Ill. 484, 487.) (See also *Best Coin-Op, Inc. v. Paul F. Ilg Supply Co.* (1989), 189 Ill. App. 3d 638, 650, 545 N.E.2d 481 (doctrine of *res judicata* extends to bar "any other matters properly involved by the subject matter which could have been raised and determined").) Plaintiffs, however, urge that this argument was waived because it was not raised before the trial court. (*George W. Kennedy Construction Co. v. City of Chicago* (1986), 112 Ill. 2d 70, 77, 491 N.E.2d 1160.) Defendants point out that they did raise the issue, albeit very briefly and without elaboration. See *Thompson v. Heydemann* (1992), 231 Ill. App. 3d 578, 596 N.E.2d 664.

However, even if the *res judicata* defense were waived, it would not alter the outcome because we would then determine that Judge Scotillo's striking of the plaintiffs' second 1986 petition would, in any event, not constitute an abuse of discretion. Plaintiffs were aware of the illegal rate reserve since the time of the Maynard decision, which was handed down in 1974. Unlike the other turnover petitions, where the status of the escrowed funds could not necessarily have been known to plaintiffs without the assistance of the auditor's reports, plaintiffs had first hand knowledge of the illegal rate reserve fund 10 years prior to bringing their action and still failed to include the claim to this interest in their original complaint. Under these circumstances, we would hesitate to say that Judge Scotillo's denial of plaintiffs' eleventh-hour attempt to extend the scope of the December 14, 1984, order to include this interest constituted a clear abuse of discretion. This is particularly true in light of the fact that plaintiffs failed to seek the illegal rate reserve interest in their original pleadings or to include their claim in the notice sent to class members or raise this reserve until after the December 14, 1984, order was entered. *Cf. Manor Healthcare Corp. v. Guzzo* (7th Cir. 1990), 894 F.2d 919, 923, quoting *United States Labor Party v. Oremus* (7th Cir. 1980), 619 F.2d 683, 692 (trial court's decision to deny a post-judgment leave to amend when party had knowledge relevant to the amendment before the court entered judgment was not an abuse of discretion because " '[d]elay in presenting a post-judgment amendment when the moving party had an opportunity to present the amendment earlier is a valid reason for [the] district court not to permit an amendment' "); *Stringer Construction Co. v. Chicago Housing Authority* (1990), 206 Ill. App. 3d 250, 260, 563 N.E.2d 819 (amendments to pleadings should not be permitted after trial is begun

"if the proposed amendment raises matters of which the pleader had full knowledge at the time of interposing the original pleading").

Furthermore, Judge Scotillo would have acted within the latitude of his discretion if he premised his rejection of this claim solely upon the ground that the interest on the illegal rate reserve did not automatically fall within the scope of the December 14, 1984, order. A court is in the best position to interpret its own orders and as such a court's interpretation of its own order should not be reversed unless the record clearly shows an abuse of discretion. (*In re Chicago, Rock Island & Pacific R.R. Co.* (1988), 860 F.2d 267, 272, citing *Arenson v. Chicago Mercantile Exchange* (7th Cir. 1975), 520 F.2d 722.) Even if the orders are unclear on review, deference to the court's interpretation of its order is warranted. *Chicago, Rock Island & Pacific*, 860 F.2d at 272.

The December 14, 1984, order specifically applies to collected taxes which are invested and paid over to the plaintiffs. The character of the taxes contained in the illegal rate reserve is of a decidedly different nature. Those taxes are not held for the purpose of their eventual payment to the taxing districts, but rather are withheld by the county for the specific purpose of covering any judgments or costs incurred in the adjudication of claims over improperly levied tax rates or assessments. There is no guarantee that any portion of these taxes will ever be distributed to the taxing districts, as funds contained in the illegal rate reserve are paid out to meet taxpayer claims from prior years. Considering the distinct nature and the statutory character of the illegal rate reserve and the substantial variation of these taxes from those addressed in the December 14, 1984, order, Judge Scotillo did not abuse his discretion in his refusal to assess whether under *Wood Dale* he should amend his order of December 14, 1984, to encompass the illegal rate reserve fund interest as well.

For the reasons herein above discussed, plaintiffs' appeal and defendants' cross-appeal are dismissed for want of jurisdiction for the reason that no final judgment was entered in this case. With respect to defendants' cross-appeal from the award of attorney fees, we also note defendants' lack of standing as an additional ground for dismissal.

Appeal and cross-appeal dismissed.

LORENZ and MURRAY, JJ., concur.